UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLSON HENDERSON,

                Plaintiff,

      – *against* –

THE ROMAN CATHOLIC DIOCESE
OF BROOKLYN, FRANCSISCAN
BROTHERS OF BROOKLYN, CAMP
ALVERNIA, *and* FRIARS OF
ASSUMPTION BVM PROVINCE,
INC.,

                Defendants.

**<u>OPINION & ORDER</u>**

23-cv-05707 (ER)

---

<u>Ramos</u>, D.J.:

        Willson Henderson brought this action in the Supreme Court of New York, Bronx County pursuant to New York's Child Victims Act ("CVA") against the Roman Catholic Diocese of Brooklyn (the "Brooklyn Diocese"), the Franciscan Brothers of Brooklyn (the "Brothers"), Camp Alvernia (the "Camp), and the Friars of Assumption BVM Province, Inc. (the "Friars") (collectively "Defendants"), alleging that he was sexually abused at the Camp, a summer retreat for children, during the summers of 1956 and 1957.  Doc. 1-1. The Camp removed this case to this Court on July 3, 2023.  Doc. 1.  Henderson moves to remand this action to the Bronx County Supreme Court, pursuant to 28 U.S.C. §§ 1447(c), 1334(c)(1), and 1452(b), and for attorney's fees.  Doc. 8.  For the reasons set forth below, the motion to remand is GRANTED, and Henderson's request for attorney's fees is DENIED.

I.      **BACKGROUND**

      **A.  Parties**

      Henderson resides in Bronx County, New York.  Doc. 1-1 ¶ 9.[1]  He was approximately 11 and 12 years old at the time of the alleged sexual abuse, which occurred at the Camp in the summers of 1956 and 1957.  *Id.* ¶¶ 10, 96.  The Camp is a summer retreat for children in Centerport, New York, which was overseen by the Brooklyn Diocese, the Brothers, and the Friars.  *Id.* ¶¶ 10–11.

      The Brooklyn Diocese and the Brothers are non-profit religious corporations, organized exclusively for charitable, religious, and educational purposes.  *Id.* ¶¶ 13, 20.  Their principal place of business is in Brooklyn, New York.  *Id.* ¶¶ 14–15, 21–22.

      The Camp is a non-profit religious corporation wholly owned, operated, and controlled by the Brooklyn Diocese and the Brothers.  *Id.* ¶ 27.

      The Friars is a religious non-profit entity that maintains its principal place of business in Franklin, Wisconsin.  *Id.* ¶¶ 33–34.

      At all relevant times, Brother Gregory ("Gregory"), the alleged abuser, was Defendants' agent, servant, and employee.  *Id.* ¶¶ 38–41.

      **B.  Factual Background**

      Henderson began attending the Camp when he was 10 years old in 1955.  *Id.* ¶ 69.  Henderson alleges that Gregory sexually abused him approximately two times in the summer of 1956, and ten times in the summer of 1957.  *Id.* ¶¶ 94–97.  The alleged abuse included Gregory fondling, groping, and reaching into Henderson's pants to rub his genitals, performing oral sex on Henderson, digitally penetrating Henderson's anus, and anal penetration of Henderson.  *Id.* ¶ 95.  Henderson did not report the alleged sexual abuse due to "the dominating culture of the Catholic Church."  *Id.* ¶¶ 98–101.

---

[1] This exhibit includes both the complaint and amended complaint.  *See* Doc. 1-1.  The Court refers only to the amended complaint for the facts of this action.

Henderson alleges that Defendants did not inform students or their families that there were credible allegations against Gregory, nor did they request that victims come forward. *Id.* ¶¶ 102–05.

Henderson allegedly suffered and will continue to suffer a number of personal and psychological injuries due to Defendants' conduct, including "great pain of mind and body; severe and permanent emotional distress; … and feeling that his childhood and innocence was stolen." *Id.* ¶ 110. "As a victim of Defendants' misconduct," Henderson is unable to perform daily activities, and he has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling. *Id.* To this day, Henderson is unable to speak of the abuse and the extent of the harm he suffered. *Id.*

### C. Procedural History

Henderson filed a complaint against Defendants in Bronx County Supreme Court on March 16, 2021. *Id.* at 3–40. He later filed an amended complaint on May 4, 2021, alleging that he suffered physical, psychological, and emotional injuries and damages as a result of the sexual offenses. *Id.* at 43–81.[2] The amended complaint alleges three causes of action: (1) negligence, (2) negligent hiring, retention, supervision, and direction, and (3) breach of statutory duty to report abuse under New York Social Services Law §§ 413 and 420. *Id.*

The Roman Catholic Diocese of Rockville Centre, New York (the "Rockville Centre Diocese")[3] commenced an action pursuant to Chapter 11 of the U.S. Bankruptcy Code in the Bankruptcy Court of the Southern District of New York on October 1, 2020. *See In re The Roman Catholic Diocese of Rockville Centre, New York*, No. 20-12345 (MG) (Bankr. S.D.N.Y.) (the "Bankruptcy Action"). Doc. 1-4. On November 4, 2020,

---

[2] "Sexual offenses" is defined in Article 130 of the New York Penal Laws, including without limitation, conduct constituting rape (consisting of sexual intercourse) (N.Y. Penal Law §§ 130.25–130.35); criminal sexual act (consisting of oral or anal sexual conduct) (N.Y. Penal Law §§ 130.40–130.53), and/or sexual abuse (consisting of sexual contact) (N.Y. Penal Law §§ 130.55–130.77).

[3] According to the Rockville Center Diocese, the Brooklyn Diocese of Nassau and Suffolk Counties became the Rockville Center Diocese in 1957. *See* Doc. 12 at 11.

the Bankruptcy Court entered a preliminary injunction, enjoining current and future state court actions, like Henderson's; thus, Henderson's action was stayed *ab initio* pursuant to the preliminary injunction.   Doc. 1 at 2; *see also* Doc. 8-1 at 5.  The Bankruptcy Court extended the preliminary injunction several times, and the parties stipulated to several extensions thereafter.  Doc. 1 at 2–3.  On June 9, 2023, the Bankruptcy Court ordered that the preliminary injunction be lifted on June 16, 2023.  *Id.* at 3; Doc. 1-3.

Approximately two and half weeks later after the preliminary injunction was lifted, on July 3, 2023, the Camp removed this action to this District.  Doc. 1.  The Camp explained that that this Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) because the asserted claims are related to the Bankruptcy Action, and this action can therefore be properly removed to federal court pursuant to 28 U.S.C. § 1441(a).  *Id.* at 3–4.  The Camp specifically noted that this case could have an effect on the bankruptcy estate because its outcome "could alter the [Rockville Centre Diocese's] rights, liabilities, options, or freedom of action."  *Id.*  The Camp further explained that prosecution of this case "threatens to (1) expose the [Rockville Centre Diocese's] estate to claims for indemnity or contribution by the Defendant; (2) deprive the [Rockville Centre Diocese's] estate of proceeds of its shared insurance policies; and (3) create a risk of *res judicata* or collateral estoppel with respect to the [p]roof of [c]laim."  *Id.* at 4.  The Camp also noted that removal was timely because the statutory deadline to remove was tolled by the Bankruptcy Court's preliminary injunction, meaning that the deadline was extended to July 16, 2023.  *Id.* at 2–3.

On July 20, 2023, Defendants filed a notice of joint petition to fix venue for claims related to the Bankruptcy Action.  Doc. 7.  That notice indicated that the Rockville Centre Diocese and its affiliates filed a joint petition to transfer this action—along with a list of others—to this District in an action pending before Judge Lorna G. Schofield.  *Id.; see In re The Roman Catholic Diocese of Rockville Centre, New York*, No. 23-cv-05751

(LGS) (S.D.N.Y.) (the "Petition").  Defendants sought to consolidate this instant action with other similar actions.  Doc. 7.

On July 31, 2023, Henderson filed the instant motion to remand, arguing that (1) this action does not impact the bankruptcy case; and (2) this action deals purely with issues arising under state law and is a matter over which state courts have specialized training and interest in adjudicating.  Doc. 8; Doc. 8-1 at 6.  That same day, the Brothers and the Camp (the "Opposing Defendants") filed their joint answer to the complaint. Doc. 9.

On August 2, 2023, the Court held a telephonic conference, during which the Court stayed this action pending the adjudication of the Petition.  Doc. 10.

On August 14, 2023, the Opposing Defendants filed their opposition to the instant motion.  Doc. 12.[4]

On November 22, 2023, the Rockville Centre Diocese filed a suggestion of stay of this action due to a liquidation order which the Delaware Court of Chancery entered on November 8, 2023, declaring Arrowood Indemnity Company—one of the Rockville Centre Diocese's principal insurers with respect to a CVA litigation—insolvent (the "Arrowood liquidation").  Doc. 13.

Approximately 4 months later, on April 1, 2024, Henderson wrote to the Court, requesting that the stay be lifted in light of Judge Schofield's Order dated March 13, 2024 which referred the Petition to Judge Martin Glenn of the U.S. Bankruptcy Court for the Southern District of New York for a report and recommendation.  Doc. 14.  On May 9, 2024, the Court held a telephonic conference and ordered the stay to continue.

On June 17, 2025, Henderson filed a letter again requesting that the Court lift the stay on this case, noting that the Bankruptcy Action was resolved and the Petition was

---

[4] To date, the Brooklyn Diocese and the Friars have not filed an opposition to the motion.  While counsel for the Brooklyn Diocese appeared at the May 9, 2024 Court conference, counsel for the Friars has not appeared in the instant case.  Moreover, Henderson has not filed a reply in support of the motion.

deemed "resolved and withdrawn" and was closed on December 16, 2024.  Doc. 18.
Additionally, Henderson stated that the stay imposed by the Arrowood liquidation expired
on March 26, 2025.  *Id.*

On June 18, 2025, the Court directed Defendants to respond to Henderson's letter
by June 20, 2025.  Doc. 19.  Defendants did not file a response.

On July 14, 2025, the Court directed the parties to submit a status report by July
21, 2025.  Doc. 20.  On July 21, 2025, Henderson filed a status update, noting that
Defendants had not responded to his June 18 letter, and reiterating his request that the
stay be lifted because the Arrowood liquidation stay expired on March 26, 2025 and the
Bankruptcy Action was resolved in December 2024.  Doc. 21.  Henderson additionally
argued that the Opposing Defendants' opposition to the pending motion to remand is no
longer "arguably viable" because the matter was removed to federal court on grounds that
it could conceivably affect the Bankruptcy Action has since been settled.  *Id.*

The stay in action was lifted on July 23, 2025.  Doc. 22.

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction.  A defendant may remove a civil
action from state court to federal court if the action is one over which the federal court
would have had original jurisdiction.  *See* 28 U.S.C. § 1441(a).  The defendant, as the
party seeking removal and asserting federal jurisdiction, bears the burden of
demonstrating that removal is proper.  *See California Public Employees' Retirement
System v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004).

Federal courts must "strictly construe the federal removal statute, resolving all
doubts in favor of remand."  *Vasura v. Acands*, 84 F. Supp. 2d 53, 535 (S.D.N.Y. 2000)
(internal quotation marks omitted).  Lack of subject matter jurisdiction cannot be waived
and "may be raised at any time by a party or by the court *sua sponte*."  *Lyndonville
Savings Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000); *Arbaugh v.*

*Y&H Corp.*, 546 U.S. 500, 506 (2006).  If subject matter jurisdiction is lacking, the action must be remanded.  28 U.S.C. § 1447(c).

When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff.  *See Weiss v. Hager*, No. 11-cv-2740 (VB), 2011 WL 6425542, at *2 (S.D.N.Y. Dec. 19, 2011) (citation omitted).  Moreover, "[b]ecause this is a jurisdictional inquiry," the Court may "look beyond the face of the complaint" to affidavits and exhibits when deciding whether to remand.  *Government Employees Insurance Co. v. Saco*, Nos. 12–cv–5633, 15-cv-634 (NGG) (MDG), 2015 WL 4656512, at *3 (E.D.N.Y. Aug. 5, 2015).

## III.    DISCUSSION

The parties do not dispute that at the time this action was removed, this Court had "related to" subject matter jurisdiction under 28 U.S.C. 1334(b) because of the Bankruptcy Action.  *See* Docs. 8-1; 12.  The Bankruptcy Action, however, is now resolved.  *See In re The Roman Catholic Diocese of Rockville Centre*, New York, No. 20-12345 (MG) (Bankr. S.D.N.Y.).  Accordingly, the Court no longer has jurisdiction over this action, and it may be remanded on this basis alone.

### A.  Motion for Remand[5]

Even if the Bankruptcy Action had not resolved, the Court would still remand. Henderson moves to remand the instant action to state court on the ground that it "(i) does not seek recovery from the debtor or bankruptcy estate; (ii) exclusively involves

---

[5] The Court notes that there are numerous similar actions brought under the CVA against the Rockville Centre Diocese and related agents that were removed to the Eastern District of New York, which were subsequently remanded to state court in 2023.  *See e.g.*, *In re Child Victims Act Cases Removed From State Court*, 686 F. Supp. 3d 203 (E.D.N.Y. 2023); *In re Child Victims Act Cases Removed From State Court*, Nos. 23-cv-04741, 23-cv-04865, 23-cv-04862, 23-cv-04984, 23-cv-04993, 23-cv-05010, 23-cv-05095, 23-cv-05084, 23-cv-05098, 23-cv-05059 (HG), 2023 WL 5287067 (E.D.N.Y. Aug. 17, 2023); *In re Child Victims Act Cases Removed From State Court*, Nos. 23-cv-4787, 23-cv-4833, 23-cv -4977, 23-cv-5126 (KAM), 2023 WL 7283793 (E.D.N.Y. Nov. 3, 2023); *In re Child Victims Act Cases Removed From State Court*, Nos. 23-cv-5163, 23-cv-5166 (NJC), 2023 WL 8109182 (E.D.N.Y. Nov. 22, 2023); *ARK671 Doe v. St. James*, No. 223-cv-05148 (NJC) (SIL), 2023 WL 8540898 (E.D.N.Y. Dec. 11, 2023).

state law claims between non-debtor parties; and (iii) is more appropriately resolved in state court, [his] chosen forum." Doc. 8-1 at 6. Henderson also argues that, to the extent this Court has subject matter jurisdiction, it is "related to" and not "arising in" or "arising under." *Id.*

Henderson argues that remand is warranted pursuant to both mandatory and permissible abstention. *Id.* The Court addresses each in turn.

### 1. Mandatory Abstention

Mandatory abstention doctrine requires federal courts to abstain from hearing non-core bankruptcy matters concerning state law issues in certain circumstances. *In re Aramid Entertainment Fund Limited*, No. 21-cv-4840 (ER), 2022 WL 118293, at *4 (S.D.N.Y. Jan. 12, 2022). Under 28 U.S.C. § 1334(c)(2), abstention is required if each of six conditions is met:

> the abstention motion is timely; (2) the action is based on a state law claim; (3) the action is "related to" but does not "arise in" a bankruptcy case or "arise under" the Bankruptcy Code; (4) section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) that action can be "timely adjudicated" in state court.

*Id.* (citations omitted); *see In re Dreier*, 438 B.R. 449, 457 (Bankr. S.D.N.Y. 2010).

The parties do not dispute that the first five requirements are met. Thus, the parties only contest the sixth requirement.

Whether the Court must abstain from exercising jurisdiction, therefore, hinges on whether this action "can be timely adjudicated[ ] in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). "The Second Circuit has instructed courts to consider the following '[f]our factors' when 'evaluating § 1334(c)(2) timeliness: (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of

the estate.'" *In re Child Victims Act Cases Removed From State Court*, Nos. 23-cv-04741, 23-cv-04865, 23-cv-04862, 23-cv-04984, 23-cv-04993, 23-cv -05010, 23-cv-05095, 23-cv-05084, 23-cv-05098, 23-cv-05059 (HG), 2023 WL 5287067, at *7 (E.D.N.Y. Aug. 17, 2023) (quoting *Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 572, 580 (2d Cir. 2011)).  "Weighing these factors is not as simple as asking 'whether an action could be adjudicated most quickly in state court.'" *Id.* (quoting *Goldman v. Grand Living II, LLC*, No. 21-cv-1028 (AMD) (RML), 2021 WL 4033277, at *4 (E.D.N.Y. Sept. 3, 2021)).  Instead, "[a] state court ... may still be a timely forum, even if it will require more time to adjudicate an action than a federal court, as long as the bankruptcy proceedings will not be hindered by the delay." *In re Miami Metals I, Inc.*, 625 B.R. 593, 601 (Bankr. S.D.N.Y. 2021).

The Second Circuit has expressly left undecided "which party should bear the burden" on these factors regarding timely adjudication. *In re Child Victims Act Cases*, 2023 WL 5287067, at *7 (citations omitted).  "Multiple district court and bankruptcy court decisions have since concluded that the removing defendant bears this burden, consistent with the defendant's overall burden of establishing removal jurisdiction." *Id.* (citations omitted).  This Court "takes no position on this uncertainty because the timeliness factors counsel mandatory abstention regardless of which party bears the burden." *Id.*

Henderson argues that sixth requirement weighs in favor of abstention because Judge Glenn ruled that the threats identified by the Rockville Centre Diocese in the Bankruptcy Action are "illusory," specifically, the Rockville Centre Diocese failed to, among other things, "articulate any scenarios leading to indemnification" and "prove any threat posed by the [s]tate [c]ourt [a]ctions of inconsistent rulings or *res judicata*." Doc. 8-1 at 8.  Henderson further argues that the Bankruptcy Action "is not on a verge of resolution that would be disrupted by" this action and that there is no indication that this action would be resolved timelier in this Court or Bankruptcy Court. *Id.* at 8–9.  The

Opposing Defendants counter that Henderson has not met his burden of demonstrating that this case may be "timely adjudicated" in New York state court. Doc. 12 at 29–30. The Opposing Defendants further argue that if this action is consolidated with other actions in the Southern District of New York, then this District, "which can directly coordinate with the Bankruptcy Court, will have more familiarity with the details and facts of this case (and other related cases) than a state court." *Id.* at 30.

Here, the sixth requirement weighs in favor of abstention. As to the first timeliness factor, the Court declines here to "presume [that] one court's backlog is more manageable than the other's." *Goldman*, 2021 WL 4033277, at *4 (citations omitted). Even if the state court in which this case was pending has "a larger overall backlog than this Court, the [CVA] provided state courts with resources to facilitate the timely adjudication of cases like these, 'including special trial preferences for cases revived pursuant to the [CVA], specialized training for judges, and the promulgation of rules designed to promote rapid resolution.'" *In re Child Victims Act Cases*, 2023 WL 5287067, at *7 (citations omitted). In New York state court, there are "dedicated part(s) … in each [j]udicial [d]istrict [that are] assigned all actions revived pursuant to [the CVA]." 22 N.Y.C.R.R. §§ 202.72. The specific New York rule regarding the administration of CVA cases notes that judges "shall be mindful of the statutory directive that such actions be adjudicated in a timely fashion … and shall aspire" for discovery to complete within one year of the first preliminary conference. *Id.*

The second timeliness factor also weighs in favor of abstention. This action involves tort actions involving the CVA, and state courts "have already developed a significant body of law interpreting both the scope of the [CVA] and its impact on the normal rules of civil procedure." *In re Child Victims Act Cases*, 2023 WL 5287067, at *8 (citations omitted). In addition, "[the] New York legislature made a calculated decision to revive [CVA] claims … [so] New York courts … have a vested interest in developing this nascent body of law." *Id.*

10

As to the third and fourth timeliness factors, the Bankruptcy Action is already resolved, so this action in state court could not prolong the administration or liquidation of the estate. Regardless at the time of the filing of this motion, Bankruptcy Action was not on the verge of resolution, and it was irrelevant whether this action was adjudicated in this Court or in state court.

### 2. *Permissible Abstention and Equitable Remand*

Even if a party has commenced core bankruptcy proceedings in federal court—or removed them to federal court—courts may voluntarily abstain from hearing those proceedings under certain circumstances. *In re Child Victims Act Cases*, 2023 WL 5287067, at *4. Section 1334(c)(1) permits a court to abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Courts consider the following factors "[i]n deciding whether to permissibly abstain" under this section:

> (1) the effect or lack thereof on the efficient administration of the bankruptcy estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of the court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Child Victims Act Cases*, 2023 WL 5287067, at *4 (quoting *Osuji v. HSBC Bank, U.S.A., N.A.*, 580 B.R. 605, 612 (E.D.N.Y. 2018)).

Section 1452(b) provides another basis for abstention that applies specifically to removed cases, allowing a federal court to remand claims to state court "on any equitable

ground." 28 U.S.C. § 1452(b). "The criteria for assessing equitable remand under 28

U.S.C. § 1452(b) and permissive abstention under 28 U.S.C. § 1334(c)(1) 'are essentially

the same and are often analyzed together.'" *In re Child Victims Act Cases*, 2023 WL

5287067, at *4 (quoting *Worldview Entertainment Holdings, Inc. v. Woodrow*, 611 B.R.

10, 20 (S.D.N.Y. 2019)). "Nevertheless, when considering equitable remand, courts

typically identify a slightly smaller list of relevant factors than when considering

permissive abstention":

> (1) the effect on the efficient administration of the bankruptcy estate;
> (2) the extent to which issues of state law predominate; (3) the
> difficulty or unsettled nature of the applicable state law; (4) comity;
> (5) the degree of relatedness or remoteness of the proceeding to the
> main bankruptcy case; (6) the existence of the right to a jury trial;
> and (7) prejudice to the involuntarily removed defendants.

*Id.* (citations omitted).

Henderson argues that several factors under both tests—specifically, factors 1, 2,

3, 4, 6, 7, 8, and 12 for permissive abstention, and factors 1, 2, 3, 4, and 5 for equitable

remand—"all weigh in favor of remand" because this action "was commenced in state

court, involves solely non-debtor parties[,] and consists of purely state law claims." Doc.

8-1 at 12. The Opposing Defendants argue that permissive abstention is not appropriate

here because this action is "functionally inseverable" from the Bankruptcy Action. Doc.

12 at 25. The Opposing Defendants further argue that although this action raises state law

questions, specifically various tort claims, "they are not the types of state law questions

that obligate a federal court to abstain." *Id.* at 26–27.

Here, even if the Court had "related to" jurisdiction and found that mandatory

abstention did not apply, the Court would find that permissive abstention and equitable

remand are appropriate here. "[T]he predominance of state law issues has been described

as one of the more compelling reasons for abstaining." *Osuji*, 580 B.R. at 614.

Henderson asserts only state law claims, so state law issues predominate over any

potential federal issues. *See 47 E. 34th St. (NY), L.P. v. BridgeStreet Worldwide, Inc.*, No.

20-cv-9978 (LJL), 2021 WL 2012296, at *10 (S.D.N.Y. May 20, 2021). State courts also "still 'have the greatest interest in resolving issues of state law'—even non-complex ones," like the claims here. *Libertas Funding, LLC v. ACM Development, LLC*, No. 22-cv-00787 (HG) (MMH), 2022 WL 6036559, at *6 (E.D.N.Y. Oct. 7, 2022) (citation omitted).

In addition, New York courts have a strong interest in addressing the substantive and procedural issues of CVA claims. *See Sokola v. Weinstein*, No. 20-cv-925 (LJL), 2020 WL 3605578, at *17 (S.D.N.Y. July 2, 2020) (finding that permissive abstention and equitable remand applied because "[p]rinciples of comity and the local significance of the litigation under the CVA to the New York state courts weigh substantially in favor of returning the matter to those courts"). New York state courts have also established "special pretrial parts that are specifically designed to manage [CVA] cases further highlights New York's interest in deciding these cases and its courts' ability to do so efficiently." *In re Child Victims Act Cases*, 2023 WL 5287067, at *8; *see* 22 N.Y.C.R.R. § 202.72(1); *see also In re Johnson & Johnson*, No. 19-cv-3531 (CJM), 2019 WL 2497856, at *3 (S.D.N.Y. June 4, 2019) (finding that equitable remand was appropriate because "New York City Asbestos Litigation … was established specifically to deal with cases, like these, that involve personal injury claims related to asbestos [and] [t]here is no equivalent in federal court.").

### B. Motion for Attorney's Fees and Costs

Henderson requests an award of attorneys' fees and costs incurred as a result of the removal. 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The inquiry is not whether the

removal was ultimately unsuccessful, but whether the basis for removal was objectively unreasonable at the time of removal. *Id.* at 136, 141.

Here, the Camp's removal was predicated on "related to" jurisdiction. Doc. 1. While the Opposing Defendants' arguments did not prevail, they were not so devoid of color as to be objectively unreasonable. There is no indication of bad faith or that removal was sought for an improper purpose. *See Martin*, 546 U.S. at 136 (noting the statute does not create a strong presumption in favor of awarding fees). Accordingly, the Court, in its discretion, declines to grant Henderson's request for an award of attorneys' fees and costs.

## IV.    CONCLUSION

For the foregoing reasons, Henderson' motion to remand this action to the Supreme Court of New York, Bronx County is GRANTED. Henderson's request for an award of attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c) is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 8, remand this case to the Supreme Court of New York, Bronx County, and close the case.

It is SO ORDERED.

Dated:    September 30, 2025
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

14